In re HAWLEY DOWN-DRAFT FURNACE CO.

(District Court, E. D. Pennsylvania. June 14, 1916.)

No. 4521.

1. ASSIGNMENTS &⟶34—VALIDITY—BOOK ACCOUNTS.

Under the Pennsylvania laws there can be no valid assignment of book accounts without delivery of a written assignment or other equivalent.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 67-71; Dec. Dig. &⟶34.]

2. ASSIGNMENTS &⟶115—PRIORITY—SEVERAL ASSIGNMENTS.

Between two assignments of the same book account under otherwise like circumstances, the assignee who first gives notice to the debtor is first in right.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 161, 163, 171, 181; Dec. Dig. &⟶115.]

3. ASSIGNMENTS &⟶57—RIGHTS OF ASSIGNEES—CREDITORS.

A creditor assignee of a book account is, in respect to giving notice to the debtor, in the same position as an assignee for value.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 116-120; Dec. Dig. &⟶57.]

4. GARNISHMENT &⟶51—RIGHT OF ASSIGNEE.

A paper assignment, without other delivery, is valid as against the assignor, and because of this is good against the plaintiff in foreign attachment or other appearance process.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 74, 97-101; Dec. Dig. &⟶51.]

5. ASSIGNMENTS &⟶48—RIGHTS OF ASSIGNEES—EQUITABLE ASSIGNMENT.

The only difference between an assignment, which by compliance with the statute carries the legal title, and an equitable assignment, is that in one case the assignee may sue in his own name, but in the other must sue in the name of the assignor.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 133; Dec. Dig. &⟶48.]

6. BANKRUPTCY &⟶155—TRUSTEE—RIGHT OF.

The trustee in bankruptcy merely takes rights which the bankrupt may have had, coupled with those any creditor might have asserted against the bankrupt's property; but third persons may assert against the trustees any rights which they might have asserted against the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. &⟶155.]

7. BANKRUPTCY &⟶184(1)—ASSIGNMENTS OF CHOSES IN ACTION.

There is no difference between transfers of tangible personalty and choses in action, but both must be followed with delivery, and on assignment of book accounts notice to the debtor is necessary to complete a title against the trustee in bankruptcy, who represents the assignor, as well as the assignor's creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 275; Dec. Dig. &⟶184(1).]

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On reargument of petition to review. Rehearing denied.

For former opinion, see 230 Fed. 471.

John W. Creekmur, of Chicago, Ill., and Kirkpatrick & Maxwell, of Easton, Pa., for petitioner.

E. J. & J. W. Fox, of Easton, Pa., for trustee.

DICKINSON, District Judge. The occasion for the allowance of a reargument in this case is disclosed by a statement of the two points to which the reargument was limited. The pending ruling was based upon the finding as a fact by this court of the insolvency of the bankrupt at the time of the assignment of the book accounts, the proceeds of the collection of which is the subject-matter of this controversy. It further followed the conclusion of law that an insolvent could not, by simply entering into a paper writing, make a valid transfer of his property as against attacking execution creditors, unless there had been such a delivery of possession as the circumstances and conditions demanded, or at least if the insolvent became a bankrupt, and the property which was the subject-matter of the intended transfer was turned into money and received by the trustee in bankruptcy, the mere paper transfer would not constitute good · title to the money. The evidentiary facts upon which the question of delivery must be determined were not in dispute.

The petition for a reargument averred the finding of insolvency to be without any supporting facts in evidence, and to have originated with the court, and that the conclusion of law stated had not been anticpated by counsel, and because of this had not been 'discussed. The insolvency fact has been disposed of by a formal concession at bar of the insolvency of the assignor before and at the time of the assignment. The evidentiary facts involved are now all settled, and we are concerned wholly with the proper inferences of law, or otherwise, to be drawn.

There is an apparent, and, if real, a somewhat puzzling, reluctance on the part of counsel for petitioner to face the real question involved. The occasion for this observation leads to the elimination of another possible feature of the case. We are concerned with an assignment. This means a contract. This implies as an element the law of the contract, which, in turn, suggests the thought of locus. This might be expected to be found to be either an Illinois or a Pennsylvania contract. Counsel for petitioner confidently assert the law of Illinois to be with them. We had been furnished no information (beyond this statement) of what the law of Illinois on the subject is. The referee disposed of it as a Pennsylvania contract. The information (too meager to be called such) which outside sources had brought to us was that the law of Illinois is otherwise than as above stated. We are relieved of any inquiry into it by the finding of the referee and by the agreement at bar that the case is to be disposed of as one arising wholly out of a Pennsylvania contract, made here and so far as executed carried into effect here. In other words, it is to 'be disposed of as if everything which has been done had been done in Pennsylvania. Let us, therefore, try to squarely present the case to be ruled.

The Hawley Down-Draft Furnace Company had customers against whom it expected to have choses in action in the form of book accounts. It anticipated a need for money. It entered into an agreement with the National Trust & Credit Company by which it agreed to sell and assign to the Credit Company any of its accounts which it should decide to sell, and the Credit Company agreed to buy them on certain terms and advance a certain percentage of what we will call their par value. The Furnace Company became insolvent, and assigned certain listed book accounts to the Credit Company, receiving advancements, as it had been agreed. There was nothing to evidence delivery beyond the delivery of the paper agreement and the paper assignment following it, and, particularly, there was no notification to the debtors of the Furnace Company. The affairs of the assignor went into the hands of a receiver appointed by the state court, and afterwards were turned over to the trustee in bankruptcy. The accounts were paid to the receiver and by him passed on to the trustee. The Credit Company demanded these moneys (or what remained of them) of the trustee as its property. We have ignored, as of no real value, the provision in the agreement that the proceeds of the accounts, when collected, were to be sent by the Furnace Company to the Credit Company in the "original package," or, if retained by the assignor, were to be held as collections made by the Furnace Company for the Credit Company as its agent. The real question is:

"Does the money in the hands of the trustee belong to the Credit Company, or is it to be distributed among the creditors of the bankrupt?"

Inasmuch as the conclusion reached is to adhere to the findings already made in the opinion before handed down, we will confine ourselves, in the present discussion, to a review of the argument presented to us by counsel for the Credit Company, premising it with the statement of certain propositions which we regard as settled, coupled (when called for) with a reference to a sanctioning authority. These propositions are as follows:

1. If the property, here claimed to have been sold, had been tangible personal property, undelivered and suffered by the vendee to remain in the possession and dominion of the vendor, the asserted transfer would have been void against subsequent bona fide purchasers or execution creditors of the assignor. This we assume to be admitted.

2. Trustees in bankruptcy may now assert on behalf of creditors all the rights which would have belonged to execution creditors had there been such. This we assume to be likewise admitted.

[1] 3. Under the law of Pennsylvania there can be no valid transfer of book accounts without delivery of a written assignment or other equivalent. American Bank v. Federal, 226 Pa. 483, 75 Atl. 683, 27 L. R. A. (N. S.) 666, 134 Am. St. Rep. 1071, 18 Ann. Cas. 444.

[2] 4. Between two assignments of the same book accounts under otherwise like circumstances, the assignee who first gives notice to the debtor is first in right. Phillips' Estate (3), 205 Pa. 515, 55 Atl. 213, 66 L. R. A. 760, 97 Am. St. Rep. 746.

[3] 5. A creditor assignee is in this respect in the same position as an assignee for value.

[4] 6. A paper assignment, without other delivery, is valid as against the assignor, and because of this is good against the plaintiff in foreign attachment proceedings or other appearance process. Phillips' Estate, 205 Pa. 525, 55 Atl. 216, 97 Am. St. Rep. 750.

The propositions which for the purposes of this argument may be considered as open ones are the following, one of which may not be essential to the decision of the cause:

7. Is an attachment in execution to be deemed execution process, and the plaintiff an execution creditor, as is the plaintiff in a fi. fa., or is it appearance process, and the plaintiff regarded as merely succeeding to the rights of the defendant, as is a plaintiff in foreign attachment?

8. Is a trustee in bankruptcy, to whom the title passes by operation of law, within the rule which pertains to voluntary assignees for value and creditor assignees?

9. Is the National Trust & Credit Company entitled to the fund in the hands of the trustee in preference to the claim of the trustee as the representative of execution creditor claimants?

[5] The whole discussion is summed up in this final question. The first complaint (designated 2) which counsel make must be based upon a misapprehension of the intended meaning of the quoted extracts from the opinion heretofore filed. The thought was wholly academic, and its expression had no other than a clarity purpose. The distinction is what may be termed wholly technical. It is that between legal and equitable titles. The ancient prejudice against assigned rights of action having worn itself out, the only practical consequence left is the manner of naming the plaintiff. Unless the legal title passes by the transfer, the one in whom was originally the right of action must be named as the plaintiff in any suit brought. If the right to receive the funds has passed to another, the action is brought in the name of the legal plaintiff to the use of the assignee, who becomes the equitable plaintiff. If the legal title has passed, the assignee brings suit in his own name as the assignee of the legal plaintiff. An illustration is afforded by the Pennsylvania statute on the subject of the assignment of bonds. The act requires (among other things) two witnesses to an assignment. If such an assignment is made, the assignee may sue as such. If the assignment, although the same in all other respects, has but one witness, it does not pass the legal title, and suit is brought in the name of the obligor to the use of the obligee. Either assignment is good to all intents and purposes. One is a legal assignment; the other an equitable one; but one is as good as the other. There is no other difference than this: If, for instance, one is void or voidable, because in fraud of creditors, the other is.

[6] There is a like futility in discussing the title of a trustee in bankruptcy. The Bankruptcy Law does not enlarge (in the sense discussed in the submitted brief) the property rights of the bankrupt. In the proper sense of the phrase, all that passes to the trustee is what the bankrupt had. We may start with the observation that the property of the bankrupt remains subject to all claims and equities. Any one who could assert a title to or equity in the property before bankruptcy may do so afterwards. To say that it is only the prop-

erty rights of the bankrupt which pass is no more than to say that, if the bankrupt had two horses, the Bankruptcy Law does not increase the number to three or more. Under the provisions of that law, however, there does pass to the trustee, not only all rights which the bankrupt had, but also all rights which execution creditors (if there had been any) might have asserted, as well as the power to set aside certain transfers which the bankrupt may have made, and by which he, in consequence, had parted with all his rights. When, therefore, the inquiry is as between the claimant and the trustee, the question is not merely what rights had the bankrupt, but what are such rights plus the rights of execution creditors.

[7] Complaint II of the brief goes to the proposition which we give as 7 in those enumerated. Noble v. Oil Co., 79 Pa. 354, 21 Am. Rep. 66, to which we have been referred, rules it only as to foreign attachment. This is not disputed. Pellman v. Hart, 1 Pa. 263, was the case of a promissory note assigned (or indorsed over) and delivered. The latter fact made the purchaser's title a good one. The opinion, it is true, does not distinguish between attachment proceedings, which are appearance process, and those which are execution process. This case in the reasoning of the opinion (although not its facts), and those which follow it, supply the line of thought which, logically applied, admittedly supports the referee, and, if they are controlling, lead to the conclusion reached by him. The two views are here presented in a nutshell. The foreign attachment cases are aside from the point, because the rights of execution creditors are not involved; foreign attachment not being execution process. The plaintiff in an attachment in execution, however, necessarily must be, not only a creditor, but it is difficult to understand why he is not an execution creditor as well, and, if he is, then the assignments which figured in these cases are good against execution creditors, and the conclusion cannot be resisted that they are good against trustees in bankruptcy. We must either follow these cases (as did the referee), or it must be held that a plaintiff in such an attachment is not an execution creditor, or the assignments there must have been good on other grounds, or the final stand that for some reason these cases are not to be followed as ruling the point involved. The cases so far discussed can thus be passed.

U. S. v. Vaughan, 3 Bin. 394, 5 Am. Dec. 375, arose in 1811. This we think (although we have not the means at hand to verify this statement) was before the statutes giving attachment in execution process. The process, therefore, must have been foreign attachment. The report of the case does not inform us, but the case may be passed as not authoritative in other cases. The language of the opinion implies this. La Barre v. Doney, 53 Pa. Super. Ct. 435, is supported by the fact that the notice, essential to the validity of the assignment, had been given. It is true the ruling is put on both grounds, but the distinction between appearance and execution process is ignored. Hemphill v. Yerkes, 132 Pa. 545, 19 Atl. 342, 19 Am. St. Rep. 607, was decided upon its facts. The transferred thing was a check, which had been indorsed over and delivered before the attachment. The reasoning of the opinion does not reach the facts of the present case, and

there is the same omission to meet the precise point here involved. It therefore is not authoritatively ruled by the cases cited. Phillips' Estate, 205 Pa. 525, 55 Atl. 216, 97 Am. St. Rep. 750, was a case of foreign attachment.

Jarecki v. Hart, 5 Pa. Super. Ct. 422, more nearly than any other meets the needs of the petitioner. The case was, beyond room for difference of opinion, well decided on its facts. It was to all intents and purposes a case stated, inasmuch as it came up on a motion for judgment on a special verdict. The verdict really settled all disputable questions, because all that remained was whether "a valid assignment" passed title to a chose in action beyond the reach of an attacking creditor. It is clear that it did. The point here made was not really present in that case. It must be admitted, however, that substantially the same point was attempted to be made by counsel for appellant. His widely recognized ability gives assurance, as the report itself discloses, that it was well argued. It received the attention of the court. It was disposed of in an opinion written by a judge who had a firm grasp of legal principles and the powers of reasoning which lead to sound conclusions. The very vitals of the question were exposed by contrasting the case of a transfer of tangible personal chattels and of choses in action. The ruling can be accepted as an authoritative declaration (in accordance with the prior adjudications) of the law of Pennsylvania to be that an assignment of a chose in action is good as against the assignor without delivery and that notice to the debtor of the assignment of a book account is (again as against the assignor) not essential, and that a plaintiff in an attachment in execution acquires no greater rights than those of an assignee of the defendant. If he is to be regarded as such subsequent assignee, the effect given this would seem to be inconsistent with Phillips' Estate, 205 Pa. 525, 55 Atl. 216, 97 Am. St. Rep. 750, wherein it was held that, as between two such assignees, the one who first gave notice to the debtor was first in right.

Giving the ruling in the Jarecki Case its full application, there yet remains room for the thought that a trustee in bankruptcy is entitled to more consideration than one who (as a plaintiff in an attachment was held to do) stands in the shoes of the bankrupt. He is an execution creditor as well, and has all the rights of such creditors. The consequences of this will be later stated. We are unable to discover anything in the Cotton Sales Company Case (D. C.) 209 Fed. 629, which touches, or anything in the opinion of Judge Thompson, or the referee, which was meant to touch, the question before us.

We state frankly our utter inability to understand what is meant by complaints III, IV, and V. Time and again the attention of counsel was directed to the fact that the referee and the court had disposed of the case as one arising out of a Pennsylvania contract. If the contract was an Illinois contract, both the referee and the court had been proceeding on a wrong assumption. Counsel then stated this would be conceded, and the case heard as a Pennsylvania case. In the face of this stipulation the argument recurs to the assertion of an Illinois contract. Into this discussion we decline to go.

The same comment applies to complaint VI. There was an ex-

press admission and stipulation of insolvency. The only possible explanation of the discussion of features which have been eliminated by such clear and specific stipulations is that (which we assume to be the case) the paper book was prepared in advance of the argument at bar and before the stipulation was made. In this connection the observation before made that cases in the federal courts before the amendment of 1910 to the Bankruptcy Law can have no possible application is again repeated. Trustees then stood simply where the bankrupt stood, and had none of the rights of execution creditors. The same observation applies to cases in other state jurisdictions than Pennsylvania. It is well known that in some states assignments such as this would be held valid. What we are concerned with is federal cases since the amendment and Pennsylvania cases. The case of Greey v. Dockendorff, 231 U. S. 513, 34 Sup. Ct. 166, 58 L. Ed. 339, was the case of a New York contract and was ruled in accordance with the laws of that state.

Complaint VI evades the question. It is not contended that anything further in the way of delivery could have been done, other than to notify the debtor. It is an indisputable fact that this notice was not given.

Complaint VII, therefore, meets the whole question. Here again (although it is conceded the conclusion may be sound) we have the same sideling away from meeting the issue. Cases are again cited showing that in some jurisdictions notice to the debtor is not necessary. This is admitted. Cases are cited ruling that "as against the assignor" notice is not required. This must be admitted. Nothing is added to aid us to the conclusion asserted, except the case of Shepherd v. Railroad, 29 Pa. Super. Ct. 291. That was an administrator's case, and was planted upon the familiar ground that the administrator did not represent creditors. It is worthy of passing comment that Nonantum v. Webb, 124 Pa. 125, 16 Atl. 632, is cited as an authority for the proposition that the assignee of a book account is vested with "the right to sue thereon in his own name." This is in curious conflict, not only with all accepted principles, but with the express statement in the opinion in that case that the suit could not be maintained in the name of assignee, but only in the name of the assignor to the use of the assignee.

The concluding complaint brings us back to the attachment in execution cases and the difficulty in reconciling them with the ruling now made. As before remarked, it was to be expected the referee would do as he did do in following them. The question is wide open to difference of opinion. In many jurisdictions it is settled in favor of such assignees. The attachment in execution cases can, however, be distinguished, and they are seemingly as inconsistent with the ruling in the Phillips Case as with the ruling now made. The law vests the title, not only of the bankrupt, but the claims of execution creditors, in the trustee. He, therefore, is at least in the position of a subsequent assignee. As between him and the first assignee the one who first gives notice to the debtor is first in right. We have followed in this opinion, doubtless at painful length, the brief submitted with the reargument.

We adhere to the conclusion before reached, and restate it thus: A fund in the hands of a trustee in bankruptcy, arising from the collecton of book accounts due the bankrupt, will not be charged with a lien in favor of an assignee of such book accounts, to whom no delivery was made, except of the paper assignment, and who gave no notice thereof to the debtors, nor will such assignee be held to have an equitable title to the fund.

We are of opinion, although this is probably not necessary to the decision of the case before us, but in case it is held to be, that there is no distinction in Pennsylvania between transfers of tangible personalty and choses in action. Both must be followed with delivery, and notice to debtors of book accounts is necessary to a completed title against those in whom title is vested by operation of the law as representing creditors.

---

⬱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes